Curia, per

Dargan, Ch.
I can add nothing to the force with which the Chancellor, in his Circuit Decree, has so eloquently indicated the necessity of adhering to general and established principles, in the administration of justice. Under all systems or codes there must necessarily arise cases of peculiar hardship, in which individuals must be the victims, and which admit of no remedy or relief, without unsettling the rights of property and shaking the deep foundations of social order. The same inexorable character is impressed, by the divine hand, upon the laws which govern the moral and physical universe. While we may deplore the calamity of him who tumbles from a precipice, or is crushed by the weight of a falling body, none will dare to question the wisdom and benignity of that stupendous law which, while it controls the smallest atom that floats in the atmosphere, extends its influence to the remotest confines of creation, and binds all worlds and beings together in one grand and harmonious system.
There is another topic, felicitously touched by the Chancellor in his decree, and reasoned more elaborately by him in the case of Maxwell v. Conner ; and which is of the greatest importance to the well being of society. It is essential that *52 there should be rules by which tribunals charged with the administration of the law, may enforce a termination of legal controversies. It is beneficent to the parties themselves, that they should not be permitted to wage an interminable and wasting contest. Hence the judgment of a Court, having jurisdiction of the subject matter, is conclusive upon the parties, in reference to all questions of law or fact that were or might have been discussed and adjudged. The only qualification of the rule is, where superior and appellate Courts take cognisance of and review the judgments of inferior tribunals, by way of direct appeal, according to the forms prescribed by law. I know of no other exception.
By the principles of the common law, a landlord had no remedy against his tenant holding over after the expiration of the lease, but an action of ejectment; in South Carolina an action to try the title. This, (for a too common and a flagrant wrong,) was a tardy and inadequate remedy. It was provided for, by the Act of 1812, and again by the Act of 1839, which affords a more perfect relief. The Court of Magistrates and Freeholders, created by these Acts, to try such cases between landlord and tenant, is invested with the ultimate and exclusive jurisdiction over the matters submitted to it, under the provisions of law by which it is created. There is no right of appeal from its judgments. The Court of Sessions, under its general supervisory power over inferior tribunals, might, by a writ of prohibition, interpose its authority, to prevent the Court of Magistrates from transcending its jurisdiction. But as long as the proceedings of the latter Court are within the powers with which it is invested, there is no tribunal in the State authorized to reverse or review its decisions, however erroneous they may be.
Upon these principles, and according to the provisions of the Act, the judgment of the Court of Magistrates and Freeholders is binding and conclusive upon the parties, in three particulars ; first, as to the question of the tenancy; secondly, as to the identity of the premises demised; and thirdly, whether the lease has expired and the tenant is holding over. If these questions are all adjudged against the party alleged to be the tenant, it is made the imperative duty of the Court to grant the landlord a writ of habere facias possessionem. And the sheriff is required to enforce this writ against the tenant, or any other person who may be in possession of the leased premises. In the case we are now considering, all these questions have been adjudged, or must be presumed to have been adjudged, against the complainant, by a Court of competent and exclusive jurisdiction. And his bill has been filed for the purpose of enjoining the defendant, his landlord, (according to the judgment of the Court) from enforcing that judgment against him. The Chancellor, in a misapprehen *53 sion of the facts, supposed that the defendant had admitted in his answer that he had leased only two-thirds of the prem- v ises to the complainant, and that he set up no claim to the remaining third, (Mary Hardin’s share,) which he admitted to have been conveyed to the complainant. Considering the complainant as not being the lessee of the defendant as regards this third, and as being a tenant in common with him, to the extent of Mary Hardin’s share of the premises, the Chancellor thought him entitled to the relief which he sought, and decreed accordingly. If the fact had existed, and if it had been shewn that he had leased only two-thirds of the premises, and that he was legally in possession of the remaining third as tenant in common with the defendant, I incline to the opinion that if available here, it would also have been available as a legitimate ground of defence before the inferior Court. That Court, after finding that the complainant had only leased two-thirds of the premises of the defendant, and was the legal owner of the other third as tenant in common with him, might have forborne to exercise its power, in disturbing the legal relations of tenants in common; all of whom, by familiar principles of law, are equally entitled to the possession. And according to the doctrine which I have heretofore advanced, if by the constitution of the Court that tried the cause, such a matter as a tenancy in common was a legitimate ground of defence, then, if it was not made, or having been made, it was overruled, the judgment of the Court is conclusive upon the parties.
But it was conceded by the complainant’s counsel, on the hearing beiore this Court, that the defendant’s answer conceded no such state of facts as that upon which the Chancellor’s decree was predicated. It was broadly admitted, that the defendant did not concede that he had only leased the complainant two thirds of the premises, or the shares of James L. Hardin, and of Elizabeth Hardin only. This admission, in the unanimous opinion of this Court, strips the complainant’s case of every semblance of equity. I mean, of course, that technical equity upon which Chancery bases its measure of relief. In .the case thus presented, the complainant, not seeking a partition, as one tenant in common against another, nor stating or suggesting any equitable ground upon which the interposition of this Court may rest, asks this Court to reverse, or at all events to render null and inoperative, the deliberate judgment of a Court of inferior but exclusive jurisdiction, upon matters of law and fact, clearly within its powers. In the foregoing remarks I have, perhaps, laid too much stress upon the fact, that the Court that tried the cause was possessed of exclusive jurisdiction, without the right of appeal. If it had possessed concurrent jurisdiction merely, or if the act had given the right of appeal, and *54 an appeal had not been formally prosecuted, the same legal consequences would follow, and its judgment have been equally final and conclusive between the parties.
rpjie jn£erjor Qour(; not afect to try the title. And if it had, its judgment would have been inoperative; for it had no power to adjudicate such questions. If the complainant is a tenant in common with the defendant, he may file his bill in this Court for a partition. If he is the owner of the whole premises, he may institute an action before the proper legal forum, to try the title. This Court will not entertain, and has not the jurisdiction to entertain, a suit to try titles as to real estate. The complainant’s' case seems to be one entirely of that character. He admits that he leased the premises from the defendant; and that he held over after the expiration of the lease; or, which is the same thing, that a Court of competent jurisdiction has adjudged those questions against him. And he files his bill, perpetually to enjoin the judgment, because, as he says, during the continuance of his possession, acquired as a tenant from the defendant, he has obtained, by purchase from others, the paramount legal title. What is this, but an action to try the title 1 He has attorned to the defendant. He has acknowledged him as his landlord. He has undertaken to hold the land from him, and under him. At least, these facts must now be assumed to be true. And the plainest principles of law, applicable to the relations of landlord and tenant, require that he should re-deliver to him the possession. Without fraud on the part of the lessor, if one, under a misapprehension of his rights, were to lease his own lands from a stranger, there would be no relaxation of this important legal principle, either in a Court of Law or Equity.
It is ordered and decreed, that the decree of the Circuit Court be reversed, and that the complainant’s bill be dismissed.
The whole Court concurred.

Decree reversed.